1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF ARIZONA**

8   Baron Sylvester Green, II,

9               Petitioner,                          CV10-005-TUC-RCC (JM)

10  vs.                                              **REPORT AND**
                                                     **RECOMMENDATION**
11  Berry Larson, et al.,

12              Respondents.

13

14

15

16         Pending before the Court is Petitioner Baron Sylvester Green, II's Petition for

17  Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance

18  with the Rules of Practice of the United States District Court for the District of

19  Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge

20  for report and recommendation.  As explained below, the Magistrate Judge

21  recommends that the District Court, after an independent review of the record,

22  dismiss the Petition with prejudice.

1

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was arrested for his role in the shootings of Ronald Otteson and Delores Hinogiante-Cox (respectively referred to as "R" and "D" in the excerpt from the Arizona Court of Appeals decision quoted below), and indicted on charges of attempted first degree murder, aggravated assault (deadly weapon), aggravated assault (serious physical injury), and kidnapping.  After a jury trial, Petitioner was convicted of two counts of kidnapping involving a deadly weapon, two counts of aggravated assault with a deadly weapon, and two counts of aggravated assault causing serious physical injury.  *Answer*, Ex. A., p. 2.  Petitioner was sentenced to a 7.5-year prison term for each conviction with the sentences involving one victim to be served consecutively to those involving the other victim.  *Id*.

The Arizona Court of Appeals summarized the factual background as follows:

In November 2002, a Tucson police officer was dispatched to an apartment complex on a "911 hang-up call" and found two people, R. and D., with multiple gunshot wounds. Both victims told the officer that "TJ shot me." D. and R. were hospitalized for an extended period of time as a result of their injuries. D. was shot in the head, abdomen, hip, and back. R. was shot in the stomach, arm, neck, and both legs and eventually lost a portion of one leg.

In December 2002, a .357 caliber handgun was found in a different apartment. Subsequent testing revealed that a bullet recovered from R.'s apartment matched that gun.  Green and an associate, Jenkins, were at the apartment when the gun was discovered. Jenkins was later identified as "TJ." Green, Jenkins and another associate, Perkins, were all arrested for the shooting. Both victims identified Green as a participant in the shootings. The charges against Perkins were dismissed without prejudice, although both victims had identified him as having been present when they were shot.  Green was charged with attempted first-degree murder, aggravated assault with a deadly weapon, aggravated assault causing serious physical injury, and

kidnapping involving each victim as well as prohibited possession of a weapon.

*Answer*, Ex. A.

Petitioner raised five claims on direct appeal.  He asserted that the trial court erred by (1) precluding a letter written by Jenkins in which he stated that Petitioner had no prior knowledge of the robbery and had left the apartment before the shooting began; (2) allowing Jenkins and Ron Perkins to invoke their Fifth Amendment rights against self-incrimination; (3) ordering the public defender to continue representation despite a conflict of interest; (4) finding aggravating factors that required the imposition of presumptive and consecutive sentences rather than mitigated and/or concurrent sentences; and (5) giving an erroneous reasonable doubt instruction to the jury.  *Id.*, Exhibit B.  By Memorandum Decision filed September 27, 2005, the Arizona court of Appeals rejected Petitioner's claims.  *Id.*, Ex. A.   Petitioner then sought review of the decision by the Arizona Supreme Court, which denied review by order dated September 27, 2006.  *Id.*, Ex. D (Petition for Review); Ex. F (Order).

On October 26, 2006, Petitioner filed a Notice of Post-Conviction Relief.  , *Id.*, Ex. F.  On August 28, 2007, Petitioner filed a Partial Petition for Post-Conviction Relief wherein he alleged his trial counsel was ineffective for failing to: (1) obtain the testimony of witness Ron Perkins; (2) adequately investigate and/or subpoena numerous witnesses; (3) meet the standard of care regarding  significant aspects of the case; (4) present evidence and argue that victim Ronald Otteson had tacitly been granted immunity; (5) properly inform the trial court of new evidence and good

1    character supporting mitigation of Petitioner's sentence.  *Id*., Ex. G.  In a ruling filed

2    March 19, 2008, the trial court found Petitioner's claims meritless and dismissed the

3    petition.  *Id*., Ex. H.  Petitioner then sought a rehearing on the petition and, on May

4    23, 2008, the trial court ruled that he was not entitled to relief.  *Id*., Ex. I.  Petitioner

5    then sought review of his post-conviction petition in the Arizona Court of Appeals.

6    *Id*., Ex. J.  By Memorandum Decision filed January 7, 2009, the Court of Appeals

7    granted review but denied relief.  *Id*., Ex. K.

8    **II.**     <u>**LEGAL DISCUSSION**</u>

9      **A.**     **Exhaustion/Preclusion**

10      A state prisoner must exhaust the available state remedies before a federal

11    court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. §

12    2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  Exhaustion

13    occurs either when a claim has been fairly presented to the highest state court, *Picard*

14    *v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been

15    procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468

16    U.S. 1, 11 (1984).

17      Exhaustion requires that a habeas petitioner present the substance of his

18    claims to the state courts in order to give them a "fair opportunity to act" upon these

19    claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  A claim has been

20    "fairly presented" if the petitioner has described the operative facts and legal theories

21    on which the claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v.*

22    *Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995).  The operative facts must be presented in

4

1   the appropriate context to satisfy the exhaustion requirement.  The fair presentation

2   requirement is not satisfied, for example, when a claim is presented in state court in a

3   procedural context in which its merits will not be considered in the absence of special

4   circumstances.  *Castille*, 489 U.S. at 351.  An exact correlation of the claims in both

5   state and federal court is not required.  *Rice*, 44 F.3d at 1403.  The substance of the

6   federal claim must have been fairly presented to the state courts.  *Chacon v. Wood*,

7   36 F.3d 1459, 1467 (9th Cir. 1994) (citations omitted).

8       A petitioner may also exhaust his claims by either showing that a state court

9   found his claims defaulted on procedural grounds or, if he never presented his claims

10   in any forum, that no state remedies remain available to him.  *See Jackson v. Cupp*,

11   693 F.2d 867, 869 (9th Cir. 1982).   "To exhaust one's state court remedies in

12   Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack

13   his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen*

14   *v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the

15   Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir.

16   1999).

17       **1.    Claims six and seven**

18       In this case, Respondents assert that Petitioner did not exhaust claims six

19   through eight of the Petition.  In claims six and seven, Petitioner alleges due process

20   violations resulted from the trial court's denial of various discovery motions and

21   hearings in his Rule 32 PCR proceeding.   Respondents contend that these claims

22   were presented as state law claims in the Arizona Court of Appeals.  *Answer*, pp. 8-9.

1    In reply, Petitioner contends that the claims were presented properly and, in support

2    of his contention, cites to portions of his petition filed with the Arizona Court of

3    Appeals.   *Traverse*, p. 3.   In that petition, in relation to claims six and seven,

4    Petitioner cited two federal cases in support of the general assertion that:

> The denial of an evidentiary hearing also violated due process and the
> ability to prove his claims (i.e. subpoena all necessary witnesses to
> testify, and confirm the reliability and credibility of the noted
> witnesses).

*Petitioner's Memo*, Ex. J, p. 19.

The Ninth Circuit has held that a "general appeal to a constitutional guarantee,

such as due process, is insufficient to satisfy fair presentation requirements.

*Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir.2000) (quoting *Gray v. Netherland*,

518 U.S. 152, 163 (1996).   "Exhaustion demands more than drive-by citation,

detached from any articulation of an underlying federal legal theory."   *Casitllo v.*

*McFadden* 399 F.3d 993, 1003 (9th Cir.2005).   Moreover, "mere similarity between a

claim of state and federal error is insufficient to establish exhaustion."   *Shumway*,

223 F.3d at 988 (quotations omitted).   Under these standards, claims six and seven

were not exhausted.   The context shows that Petitioner raised his due process claims

as an afterthought, merely asserting that the trial court's denial of an evidentiary

hearing "*also* violated due process . . . ."   *Petitioner's Memo,* Ex. J, p. 19 (italics

added).   The cited cases are not explained or applied and Petitioner has not identified

the specific facts supporting this claims.   "It is not enough to make a general appeal

to a constitutional guarantee as broad as due process to present the 'substance of such

a claim to a state court."  *Shumway*, 223 F.3d at 987.  Petitioner's "drive-by" citations, without some explanation or argument, are insufficient to establish fair presentment.

Moreover, as Respondents contend and Petitioner does not contradict, Petitioner is procedurally barred from now raising these claims in State court.  *See* Ariz.R.Crim.P. 32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding.")  Because Petitioner did not present any of these claims to the Arizona courts, the claims are procedurally defaulted and barred from federal review.  Ariz.R.Crim.P. 32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  As such, the merits of the claims need not be addressed unless Petitioner establishes cause and prejudice or that a fundamental miscarriage of justice has occurred.  Petitioner has not attempted to do so, and the Court recommends that Petitioner's non-exhausted claims be denied.

### 2.    Claim eight

In claim eight, Petitioner asserts that the trial court violated his Sixth Amendment right to counsel by denying his trial counsel's motion to withdraw due to a conflict of interest.  *Petitioner's Memo*, p. 10.  Respondents contend that Petitioner raised this claim only under state law, and not as a Sixth Amendment claim, before the trial court.  Petitioner, in turn, argues that the claim was raised on direct appeal and was analyzed for fundamental error and denied.  *Traverse*, p. 4.

1    Petitioner is correct that the claim was denied under fundamental error

2    standards but fails to address Respondents' assertion that the claim was not raised in

3    the trial court.   In ruling on the claim, the Arizona Court of Appeals stated that

4    Petitioner "did not raise this argument in the trial court, and has, therefore, waived

5    this claim absent fundamental error."   *Petitioner's Memo*, Ex. A, p. 11 (citations

6    omitted).   The court then noted that it found "no error, much less fundamental error."

7    *Id*.   The impact of the failure to raise the claim in the trial court, but then raising it

8    before the appeals court which then reviews for fundamental error, is not entirely

9    clear.   For example in *Date v. Schriro*, 619 F.Supp.2d 736 (D.Ariz.2008), the

10   petitioner failed to object at trial and then raised the claim on appeal where it was

11   reviewed for fundamental error.    The district court nevertheless found that "the

12   Court of Appeals' fundamental error review is sufficient to exhaust Petitioner's . . ."

13   claim.   *Id*. at 774.   In other cases, the district courts have reached the opposite

14   conclusion.   *See, e.g., Lopez v. Ryan*, 2009 WL 3294876, *11 (D.Ariz. Oct.14, 2009).

15   However, Ninth Circuit authority more clearly supports reviewing such claims on the

16   merits.   *See Walker v. Endell*, 850 F.2d 470, 474 & n. 4 (9th Cir.1987) (holding that

17   review for plain error is a ruling on the merits of the claim); *Huffman v. Ricketts*, j750

18   F.2d 798 (9th Cir.1984) (claim reviewed on the merits even though petitioner's

19   federal constitutional claim was not raised at trial and was reviewed by the court of

20   appeals for fundamental error).   Thus, this claim will be reviewed on the merits.

21

22

**B.     Merits**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

**1.     Claims 1, 2, 4 and 5: Ineffective Assistance of Counsel**

Claims 1, 2, 4 and 5 of the Petition allege that Petitioner's counsel was ineffective during the investigation, trial and sentencing in Petitioner's case.  The

1   operative legal standard applicable to these claims is a familiar one, addressed by the

2   United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The

3   standards enunciated there by the Court are applied unless there is other Supreme

4   Court precedent directly on point.  *See Wright v. Van Patten*, 128 S.Ct. 743, 746

5   (2008).  Under *Strickland*, a petitioner must show both deficient performance and

6   prejudice in order to establish that counsel's representation was ineffective.  466 U.S.

7   at 687.  In the context of habeas claims evaluated under § 2254(d)(1) standards, the

8   question "is not whether a federal court believes the state court's determination was

9   incorrect but whether that determination was unreasonable– a substantially higher

10  threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

11                              **a.      Claim 2**

12          As the Government suggests, a logical inquiry into Claims 1-2 and 4-5 begins

13  with Claim 2.  In Claim 2, Petitioner argues that his counsel was ineffective because

14  he failed to adequately argue the admissibility of Ron Perkins' testimony and "free

15  talk" with police.  Ron Perkins was indicted along with Petitioner and Monte Jenkins.

16  Perkins initially denied any involvement in the crimes and denied knowing Jenkins,

17  Olden, and Petitioner.  *Petitioner's Memo*, Ex. A, pp. 3-4; Ex. B, pp. 11-12.

18  However, after he provided the police and prosecution a "free talk" during which he

19  claimed an alibi during the shooting and explained what he knew about the shooting,

20  the charges against Perkins were dismissed without prejudice.

21          In his free talk, Perkins explained that Olden, who was his roommate at the

22  time of the shooting, told him that Olden and Jenkins had shot Cox and Otteson.

1     *Petitioner's Memo*, Ex. G, p. 19.  When asked who else was there, Perkins said that

2     Olden "told me specifically that it was him and Monte [Jenkins]."  *Id.*, p. 25.  He also

3     stated that, "from the police reports, I guess [Petitioner] was there too," and that

4     Petitioner "told me that he was there, or he wasn't, he was there and he left before

5     they started shooting." *Id.*

6         At trial, Petitioner's counsel sought to present Perkins' testimony, but Perkins

7     invoked his Fifth Amendment right against self-incrimination and refused to testify.

8     *Petitioner's Memo*, Ex. A, pp. 3-5.  The trial court noted that Perkins had previously

9     been charged in the case and that the charges had been dismissed without prejudice

10    and stated that, "[h]e had invoked [his Fifth Amendment right], [and] he is therefore

11    unavailable under the rules of evidence." *Id.*, p. 5.

12        In his habeas petition, Petitioner initially contends that the trial court

13    improperly allowed Perkins to invoke his Fifth Amendment rights.  In rejecting this

14    claim in its order denying Petitioner's PCR petition, the trial court noted that when

15    the decision was made, both Petitioner's counsel and the prosecutor had made

16    arguments regarding the statement.  The trial court explained that "[t]rial counsel's

17    decision not to make further arguments, after the court rendered its decision, cannot

18    be characterized as deficient.  To the contrary, it makes sense that arguments made

19    against a decision that has already been rendered would be less effective." *Answer*,

20    Ex. H, pp. 2.  The trial court explained further that:

21              In this case, the court had heard opening statements, the testimony of
                the victims, and argument from both sides about the Perkins statement,

22              when it found Perkins unavailable.   Perkins' Fifth Amendment

privilege was properly invoked because it was established that his charges had been dismissed without prejudice.   If there is a "'a reasonable ground to apprehend danger to the witness from his being compelled to answer,' the defendant's right to compulsory process must yield to the witness's privilege not to incriminate himself."   *State v. Mills*, 196 Ariz. 269, 995 P.2d 705, 712 (App. 1999), *quoting United States v. Melchor Moreno*, 536 F.2d 1042, 1046 (5th Cir. 1976).   The trial court's decision to permit Perkins to invoke the Fifth Amendment has been affirmed by the Court of Appeals.   Given all of the above information, Petitioner has failed to show that trial counsel's performance prejudiced him to such a degree that it changed the outcome of the case.

*Answer*, Ex. H, pp. 2-3.  This decision was not unreasonable.

A criminal defendant's Sixth Amendment rights, including the right to compulsory process, do not necessarily include the right to compel a witness to waive the Fifth Amendment privilege against self-incrimination. See *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972); *United States v. Vavages*, 151 F.3d 1185, 1191-92 (9th Cir.1998); *United States v. Straub*, 538 F.3d 1147, 1166 (9th Cir.2008) (no Fifth Amendment right for defendant to demand "use immunity" for a co-defendant; courts must be "extremely hesitant" to intrude on the Executive's discretion to decide whom to prosecute).  A witness's assertion of his Fifth Amendment right is valid where he is "confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination."   *United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) (citations omitted).

Addressing this claim on direct appeal, and without the overlay of *Strickland* (which is discussed below), the Arizona Court of Appeals noted the applicable legal standards and concluded that "Perkins's charges had been dismissed without

1   prejudice, the trial court was knowledgeable about the case as a result of the pretrial

2   motions and hearings documented in the record, and it is clear the witnesses would

3   not answer any relevant questions, the court did not abuse its discretion in upholding

4   their invocation of the Fifth Amendment." *Answer*, Ex. A, pp. 7-8. This conclusion,

5   and that of the trial court in denying the PCR petition, is borne out by the record.

6   The trial transcript reflects that Petitioner's counsel, at the request of the trial court,

7   informed the prosecutor in the presence of the trial judge that Perkins would testify

8   that on the "afternoon of the shooting he saw Renaldo Olden, who he knew" and

9   Renaldo Olden told him that he, Mr. Olden, and Mr. Jenkins had shot two people that

10  night before, referring to the shooting that had taken place at the Los Arboles

11  Apartments." *Petitioner's Memo*, Ex. B, p. 10. Thus, the trial court was aware of the

12  nature and circumstances of Perkins' testimony. It was also abundantly clear that the

13  risk created to Perkins if he elected to testify was not merely trifling. He had been

14  charged with the crimes and the charges had been dismissed without prejudice. The

15  prosecution, at least at one time, obviously believed that Perkins was involved in the

16  crimes. Testifying about a conversation with alleged perpetrators (Renaldo Olden

17  and Petitioner) about the alleged crimes would certainly expose Perkins to

18  questioning on cross-examination about his role in the crimes.

19      Petitioner contends that his counsel fell below the *Strickland* standard by

20  failing to more vigorously describe to the trial court the contents to Perkins'

21  statement. This claim was also addressed by the trial court in its order denying

22

13

1    Petitioner's PCR petition.  In that order, the trial court first identified the standards

2    for a finding of ineffective assistance, and then stated that:

3        Petitioner has not shown the at trial counsel's performance fell below
         an objective standard of reasonableness by choosing not to make
4        further arguments in support of either forcing Perkins to testify or
         admit his previous statements.  At the point in which the court made its
5        decision to permit Perkins to invoke the Fifth Amendment, both sides
         had already make arguments regarding the statement.  Trial counsel's
6        decision not to make further arguments, after the court rendered its
         decision, cannot be characterized as deficient.   To the contrary, it
7        makes sense that arguments made against a decision that has already
         been rendered would be less effective.

8
         Second, Petitioner has not shown that counsel's performance
9        prejudiced him.  The court's decision to permit Perkins to invoke the
         Fifth Amendment was not made in error.  A witness may be excused
10       from testifying without violating a defendant's Sixth Amendment right
         to compulsory process, if the trial court determines that a witness could
11       "legitimately refuse to answer essentially all relevant questions."  *State
         v. McDaniel*, 136 Ariz. 188, 194, 665 P.2d 70, 76 (1983).   This
12       exception is narrow and only applies when the trial court's knowledge
         of the case is sufficient, and when the Fifth Amendment is properly
13       invoked.  *Id*.

14   *Answer*, Ex. H, pp. 2-3.

15       The trial court appropriately identified and applied the familiar *Strickland*

16   standards to evaluate Petitioner's counsel's performance.  The trial court then cited to

17   *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983), *State v. Mills*, 196 Ariz. 269,

18   995 P.2d 705 (App. 1999), and *United States v. Melchor Moreno*, 536 F.2d 1042 (5th

19   Cir. 1976), to evaluate the underlying issue of the propriety and impact of Perkins'

20   invocation of his Fifth Amendment rights.  The interplay between Petitioner's Sixth

21   Amendment right to call witnesses and the Fifth Amendment right against self-

22   incrimination is described in some detail in the cited cases, particularly in *Mills*, and

14

is the same as that applied by the United States Supreme Court. *See United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) (citations omitted). As discussed above, it was reasonable for the trial court to find that Petitioner's Sixth Amendment right to compel witnesses was trumped by Perkins' invocation of his Fifth Amendment rights. Petitioner offers nothing in his argument that potentially would have overcome the trial court's determination. Thus, his counsel cannot be said to have been ineffective for pursuing a fruitless effort to compel Perkins' testimony. *James v. Borq*, 24 F.3d 20, 27 (9th Cir.1994) (failure of trial lawyer to pursue a meritless issue does not constitute ineffective assistance of counsel).

Petitioner next claims that trial counsel failed to see a grant of immunity for Perkins so that he would be available to testify without fear of incrimination. Generally, however, a defendant is not entitled to compel a prosecutor to grant immunity to a potential defense witness to get the witness to testify. See *United States v. Paris*, 827 F.2d 395, 399 (9th Cir.1987); *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir.1978). The exception occurs where the fact-finding process is intentionally distorted by prosecutorial misconduct. *United States v. Lord*, 711 F.2d 887, 892 (9th Cir.1983).

Here, Petitioner argues that the government granted immunity to Perkins during his free talk, and argues that immunity would have been granted for his trial testimony had Petitioner's counsel requested such an extension of immunity. The record, however, contradicts Petitioner's version of events. In the preamble to the free talk, the investigator expressly stated that:

15

> At the present time, there is no agreement with you concerning any benefit you may receive as a result of this free talk. Moreover, the fact that this free talk is occurring, should not be construed by you as an agreement that you will receive any benefit. OK?

*Petitioner's Memo*, Ex. G., p. 1. Perkins was asked if he understood and responded, "Yeah." *Id.* Thus, Perkins never had immunity and no indication that immunity would be available. Thus, Petitioner's counsel cannot be found ineffective because he could not compel the government to grant immunity and, in any case, there was no indication that immunity was available.

### b. Claim 1

In Claim 1 of the Petition, Petitioner alleges that his rights to counsel, a fair trial and to compulsory process were violated when his counsel failed to subpoena five witnesses who would have testified that Ron Perkins had told them that Reynaldo Olden confessed that he and Monte Jenkins, and not Petitioner, were solely responsible for the kidnapping and assault. The trial court issued the last reasoned decision on this claim, which the Arizona Court of Appeals subsequently adopted. In its denial of Petitioner's Rule 32 petition, the trial court stated:

> The witnesses mentioned were not necessarily relevant to central issues in the case. None of the witnesses were actually at the scene of the crime. Rather, their testimony could have arguably corroborated the statement of Perkins, based on second-hand information that he received from someone who was at the scene. While some defense attorneys might conclude that the witnesses were sufficiently relevant to justify extending the length of the trial in order to hear their testimony, others might disagree. This is exactly the type of tactical decision that is left to the judgment of the individual defense counsel, and not an example of ineffectiveness.

1  *Answer,* Ex. H, p. 4.   Review of the statements in question supports the

2  reasonableness of the trial court's decision.

3      The five witnesses Petitioner contends should have been presented at trial are

4  Tiara Salters, Krystal Ward, Sharla Morgan, Nadine Rivera, and Reana Rodriguez.

5  In her interview, Tiara Salters did say that Olden told her the morning following the

6  shootings that "we beat somebody up or we killed some people or something . . . ."

7  *Petitioner's Memo*, Ex. H, p. 2.   However, Olden did not tell her who he was with

8  and she later heard from Sharla Morgan, Perkins' mother, that it was Jenkins.  *Id*., p.

9  10.   Sharla Morgan stated that Olden showed up at her apartment the morning

10  following the shooting and told her that Jenkins had shot the victims.  *Petitioner's*

11  *Memo*, Ex. J, p. 5.   Nadine Rivera was also at Sharla Morgan's house in the

12  morning when Olden arrived and told them that he "fucked somebody up." Id., Ex.

13  K, pp. 4-5.   Krystal Ward had little to add except that she talked to Tiara after the

14  shooting occurred and was told by Tiara Salters that Olden had done it.  Id., Ex. I.

15      Taken together, these portions of the statements from Salters, Morgan and

16  Rivera are certainly inculpatory as to Olden, however, they are only marginally

17  helpful to Petitioner.  Olden told Salters and Rivera that he had been involved, and

18  only told Morgan that Jenkins was also involved.  As Petitioner admits he was there

19  during at least a portion of the events, Olden was not telling the complete story to any

20  of these witnesses.   Thus, the statements do not provide substantial exculpatory

21  information for Petitioner.

22

1     More important, though, is other testimony that would have been presented if

2 these witnesses had testified.   Tiara Salters' explained that on the night of the

3 shooting she, along with Petitioner and others, was at Perkins' apartment when one

4 of her friends, Crystal Ward, was "beat up" by Reynaldo Olden.  *Petitioner's Memo,*

5 Ex. H, p. 2.  She then went with Perkins, and her friends Nadine Rivera and Reana

6 Rodriquez to drop-off Petitioner and Olden.  The group then went to Tiara's house,

7 which is also where Perkins' mother lives.  *Id*., p. 3.  Nadine Rivera also stated that

8 the group dropped Petitioner and Olden off at Jenkins' apartment. *Id*., Ex. K, p. 2.)[1]

9 These statements would have placed Petitioner in the company of Olden and Jenkins

10 prior to the shootings.   Given that Petitioner admitted to being present during the

11 shootings, it was reasonable for his counsel to balance the value of these witnesses

12 with the damages they could do.  As trial counsel explained:

13     And dumping on – basically trying to show Monte Jackson (should be
         Jenkins) and whoever else it was, were the worst people in the world, I
14     can't say that I thought necessarily this at the time but just my instinct
         reaction is, you had [Petitioner] hanging around with them.  And that
15     doesn't strike me as being, um, the wisest way for [Petitioner] to be –
         to appear in front of the jury.  I mean if you wound up showing these
16     guys to be total losers, [Petitioner] is hanging around with them, and
         my hunch is that the jury is going to think, why was he hanging around
17     with them?

18  *Petitioner's Memo,* Ex. F, p. 6.

19

20  _____

21  [1] Reana Rodriguez was in the car with Perkins, Olden, Rivera and Salters before the
    shooting and recalls dropping-off Olden, but did not remember Petitioner being
22  dropped-off with him.  *Petitioner's Memo,* Ex. L, p. 3.  Reana was then dropped-off
    at Krystal Ward's house.  *Id*., p. 4.

1   Petitioner's defense was that he knew nothing about the weapons and left

2   when the shooting began.  Although the jury ultimately believed he had a weapon,

3   his counsel's decision to forego presenting these five witnesses was quite reasonable.

4   In doing so, he avoided lining up witnesses whose testimony would suggest a close

5   relationship among Jenkins, Olden and Petitioner and would put them together at

6   Jenkins' apartment immediately prior to the shootings.  This is the sort of reasonable

7   strategic decision that deserves deference.  *Sanders v. Ratelle*, 21 F.3d 1446, 1456

8   (9th Cir.1994); *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998) (relevant

9   inquiry is whether the choices made by defense counsel were reasonable).

10              **c.       Claim 3**

11   In May 2003, Monte Jenkins sent a letter to Petitioner's counsel wherein he

12   stated:

13          This letter is in regards to your client Baron Green + his innocence
        involving the shootings of [R.] and [D.].  Im here to say + testify if
14        needed that Baron Green left [R.'s] apartment before the shootings
        occurred + Baron Green had <u>no</u> prior knowledge that [R.] or [D.] were
15        shot.  This is not a forced confession or statement at all.

16   *Answer*, Ex. A, p. 3.  Petitioner sought to have the letter admitted at trial after Jenkins

17   invoked his Fifth Amendment rights and refused to testify.  The trial court concluded

18   that the letter was not a statement against interest under Rule 804(b)(3), Ariz. R.

19   Evid., and ruled it inadmissible.  Petitioner claims that the trial court's ruling violated

20   his right to present a defense.

21              In affirming the trial court's decision, the Arizona Court of Appeals stated:

22

19

Jenkins's letter does not appear to be a statement against his interest.  Although he stated that [Petitioner] had left the apartment "before the shootings occurred," Jenkins did not place himself there during the shootings or claim any responsibility for the shootings. "Rule 804(b)(3) 'does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory.'"  *State v. Nieto*, 186 Ariz. 449, 455, 924 P.2d 453, 459 (App. 1996), *quoting Williamson v. United States*, 512 U.S. 594, 600-01, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476, 483 (1994). Courts should evaluate individual statements separately to determine if they are against the declarant's penal interest.  *Id.*  None of the statements in Jenkins's letter clearly "subject[s] him to criminal liability such that a reasonable person would not have made the[m] unless he believed them to be true."  *Id.*  Therefore, none of the statements in Jenkins's letter was admissible under Rule 804(b)(3), and the trial court did not abuse its discretion in refusing to admit them.

*Answer*, Ex. A, pp. 4-5.  The court then turned to the question of whether the ruling violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments by restricting his ability to present a defense:

In *Chambers [v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)], the Supreme Court held that, when "constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."  *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313.  But the hearsay statements at issue in that case were offered "under circumstances that provided considerable assurance of their reliability."  *Id.* at 300, 93 S.Ct. at 1048, 35 L.Ed.2d at 311-12.  In contrast, our supreme court, in *State v. LaGrand*, 153 Ariz. 21, 734 P.2d 563 (1987), found that applying the tests for admission under Rule 804(b)(3) and excluding evidence did not violate the defendant's constitutional right to due process.  And, in *State v. Davis*, 205 Ariz. 174, 68 P.3d 127 (App. 2002), the court held that a defendant's Fourteenth Amendment rights are not violated when evidence is properly excluded.  We have already determined the trial court properly precluded Jenkins's letter.  Accordingly, we conclude the trial court did not deprive [Petitioner] of any constitutional right.

*Answer*, Ex. A, pp. 4-6.

1    In support of his argument, Petitioner relies on *United States v. Benveniste*,

2    564 F.2d 335 (9th Cir.1977), for the proposition that for a statement to be admissible

3    under Rule 804(b)(3) as a statement against penal interests it does not have to be "a

4    direct confession." *Petitioner's Memo*, p. 22.  In *Benveniste*, the statements which

5    were found to be admissible directly implicated the declarant in criminal activity and

6    were explicit admissions of criminal liability.  As the court noted, the statements

7    implicated the declarant "as a key participant in a major drug sale negotiation."  564

8    F.2d at 341.  To qualify under the Rule 804(b)(3) hearsay exception, the Ninth

9    Circuit requires that "the declarant's statements must, in a real and tangible way,

10   subject him to criminal liability."  *United States v. Hoyos*, 573 F.2d 1111, 1115 (9th

11   Cir.1978).  As the state court concluded, Jenkins letter simply did not subject him to

12   criminal liability in a real and tangible way.  The letter does not say, "I did it."  It

13   says, "He didn't do it."  These are not the sort of statements that bear the hallmark of

14   reliability required for admission under the exceptions to the hearsay rule.

15   A defendant has the right under the Sixth and Fourteenth Amendments "to

16   present and have considered by the jury all relevant evidence to rebut the State's

17   evidence on all elements of the offense charged." *Montana v. Egelhoff*, 518 U.S. 37,

18   41-42 (1996).  However, "a defendant's right to present relevant evidence is not

19   unlimited, but rather is subject to reasonable restrictions, such as evidentiary and

20   procedural rules.  *Moses v.* Payne, 555 F.3d 742, 2009 WL 213070, at *12 (9th

21   Cir.2009, *as amended* Jan. 30, 2009) (internal quotation marks and citations omitted).

22   To amount to a constitutional violation, a state court's decision to exclude evidence

21

1   "must be so prejudicial as to jeopardize the defendant's due process rights." *Tinsley*

2   *v. Borg*, 895 F.2d 520, 530 (9th Cir.1990).   As discussed above, Jenkins letter was

3   reasonably interpreted as offering nothing inculpatory as to Jenkins.   Under both state

4   and federal law, to be deemed reliable enough to qualify for admission as a statement

5   against interest the statement must subject the declarant to a real and tangible

6   possibility of criminal liability.   As reasonably determined by the state court, this

7   letter simply did not contain information meeting those criteria.   The concern about

8   the reliability of the statement is a reasonable restriction and, therefore, the Petitioner

9   is not entitled to relief on this claim.

10              **d.      Claim 4**

11        In Claim 4, Petitioner offers a list of trial counsel's alleged errors and

12  omissions and claims that in the aggregate they amount to ineffective assistance of

13  counsel.  Specifically, Petitioner alleges that counsel errors included a lack of pretrial

14  investigation, a lack of effort during voir dire, an inadequate opening statement, the

15  mishandling the questioning of the victims, an inadequate closing argument, the

16  failure to present a witness, the failure to request jury instructions, and the failure to

17  suppress Petitioner's statement, all of which were part of a "generally substandard

18  approach" to representing Petitioner.

19        Cumulative error might violate a defendant's constitutional rights if it had a

20  "substantial and injurious effect" on the jury's verdict.  *Calderon v. Coleman*, 525

21  U.S. 141, 145 (1998); *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir.1995).  "[E]ven if

22  no single error were prejudicial, where there are several substantial errors, 'their

cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir.2002) (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir.1996)).  Here, the cumulative impact of trial counsel's alleged omissions and misjudgments did not render Petitioner's trial fundamentally unfair. As the trial court explained in denying this claim,

> Petitioner has, at most, shown that defense counsel made unsuccessful decisions throughout the trial, However, a petitioner must "do more than show that his counsel was unsuccessful." *Ramirez*, 126 Ariz. [464] at 467, 616 P.2d [924] at 927 [(App. 1980)].  Petitioner's laundry list of ways defense counsel could have improved at trial, does not amount to ineffective assistance of counsel.

*Answer*, Ex. H, p. 5.  An examination of these claims supports the trial court's conclusion.

Petitioner asserts that trial counsel should have more thoroughly investigated Jenkins and Olden.  As discussed above, Jenkins invoked his Fifth Amendment rights and Olden had fled the state.  Petitioner does not explain what further investigation could have been done or what it may have uncovered.  Without some evidence of what helpful evidence would have been found, this claim is meritless.  *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir.1997).

Petitioner also asserts that his counsel showed a lack of effort during voir dire, and in his opening statement and closing argument.  These arguments rely primarily on the assertion that counsel inadequately argued that Petitioner did not have a gun. The record establishes that Petitioner's counsel effectively argued that only two guns were used by the assailants.  He noted that Ron Otteson remembered three weapons,

1   two semi-automatics and a revolver, but that there were only shell casings from one

2   semi-automatic found at the scene and that the revolver would not have ejected any

3   casings.  *Petitioner's Memo,* Ex. C, p. 49.  It was within the province of the jury,

4   however, to believe Otteson's testimony, as it apparently did, that all the assailants

5   had weapons.   *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir.2002).

6   Petitioner has not established that counsel's errors led them to do so.

7        Petitioner also complains about his counsel's cross-examination of Otteson.

8   Trial transcripts, however, reflect that trial counsel's cross-examination was

9   effective.   Counsel initially established that Otteson could not positively identify

10  Petitioner and that he could only remember "bits and pieces" of the incident.

11  *Petitioner's Memo,* Ex. B., pp. 214-217.   Counsel also worked to undermine

12  Otteson's recollection that Petitioner had a weapon.  *Id*., pp. 217-219.  He established

13  that Otteson was on drugs and had been drinking, having spent $200 on drugs,

14  alcohol and gas.  *Id*., pp. 222-223.  "A fair assessment of attorney performance

15  requires that every effort be made to eliminate the distorting effects of hindsight . . .

16  ."  *Strickland*, 466 U.S. at 689.  The examination of Otteson by Petitioner's counsel

17  was effective and served the purposes of calling his credibility and memory into

18  question.   Petitioner's criticisms are picayune when examined in light of the

19  examination as it actually occurred at trial.  This is not the sort of alleged error that

20  would support a finding of *Strickland* error.

21       Petitioner is also critical of his counsel because he did not "make a winning

22  motion pursuant to the 5th/6[th] Amendments."  Petitioner contends that the statement

24

1  would have been found involuntary because Petitioner was a juvenile at the time he

2  was questioned and he was not informed of his right to have his parents present.  In

3  support of this argument, Petitioner cites an Arizona case, *In re Andre M.*, 207 Ariz.

4  482, 88 P.3d 552 (2004), and cites to the statement itself.  The issue of voluntariness

5  is not a factual determination entitled to a presumption of correctness under 28

6  U.S.C. § 2254(d), but is a legal question requiring independent consideration in a

7  federal habeas proceeding.  *Miller v. Fenton*, 474 U.S. 104, 116 (1960); *Collazo v.*

8  *Estelle*, 940 F.2d 411, 415 (9th Cir.1991) (en banc) (concluding federal court is not

9  bound by state court finding that confession is voluntary).

10      Here, Petitioner offers little to establish that the statement was involuntary.

11  The voluntariness of the statement is evaluated by reviewing the conduct of the

12  police in extracting the confession and the effect of that conduct on the suspect.

13  *Miller*, 474 U.S. at 116; *Henry v. Kernan*, 197 F.3d 1021, 1026 (9th Cir.1999).

14  Without police misconduct related to the confession, there is no basis for the

15  suppression of the statement.  *Colorado v. Connelly*, 479 U.S 157, 167 (1986);

16  *Norman v. Ducharme*, 871 F.2d 1483, 1487 (9th Cir.1987).  While the fact that a

17  defendant is a juvenile "is of critical importance in determining the voluntariness of

18  his confession," *Doody v. Ryan*, 649 F.3d 986, 1008 (9th Cir.2011), without more,

19  Petitioner cannot establish his age rendered his confession involuntary.  For example,

20  in *Taylor v. Maddox*, 366 F.3d 992 (9th Cir.2004), the 16 year-old petitioner's

21  statement was found to be involuntary in part because of his age, but also because he

22  was interrogated for three hours in the middle of the night without counsel or a parent

1    present, denied access to a telephone to contact counsel, and was threatened by the

2    interrogating officer's actions.   *Id.* at 1015-16.   Looking at the transcript of

3    Petitioner's interview discloses that, other than age, none of these factors was

4    present.  *Petitioner's Memo,* Ex. Z.  The facts of this case are simply not on par with

5    those found sufficient to find involuntariness in *Taylor*.

6                              **e.      Claim 5**

7         In Claim 5 of the Petition, Petitioner alleges that his counsel violated the

8    *Strickland* standards during sentencing.  Specifically, he alleges that his trial counsel

9    failed to present additional evidence of Petitioner's good character and "to provide a

10   wealth of evidence and law to obtain lower sentences, <u>or</u> concurrent sentences, in

11   light of actual innocence and residual doubt or an even lower level of involvement . .

12   . ."  *Petitioner's Memo*, p. 28.

13        In *Strickland*, the Supreme Court expressly declined to "consider the role of

14   counsel in an ordinary sentencing, which . . . may require a different approach to the

15   definition of constitutionally effective assistance."  *Strickland*, 466 U.S. at 686.  In

16   *Davis v. Grigas*, 443 F.3d 1155 (9th Cir.2006), the Ninth Circuit held that "since

17   *Strickland*, the Supreme Court has not delineated a standard which should apply to

18   ineffective assistance of counsel claims in noncapital sentencing cases.  Therefore, . .

19   there is no clearly established federal law as determined by the Supreme Court in this

20   context."   443 F.3d at 1158; *see also Cooper-Smith v. Palmateer*, 397 F.3d 1326,

21   1244 (9th Cir.2005) ("[I]n *Strickland*, the Court expressly declined to consider the

22   role of counsel in an ordinary sentencing, which . . . may require a different approach

26

1   to the definition of constitutionally effective assistance.") (internal quotation marks

2   omitted)).  As there is no clearly established Supreme Court precedent that applies to

3   this claim, Petitioner is not entitled to relief pursuant to the standards set forth in §

4   2254(d).

5                      **2.    Claim 8: Sixth Amendment Right to Counsel**

6           In Claim 8, Petitioner contends that his Sixth Amendment right to counsel was

7   violated because the trial court denied his trial counsel's motion to withdraw based

8   on a conflict of interest. The alleged conflict was that the Office of the Public

9   Defender, by which Petitioner's counsel was employed, had simultaneously

10  represented Petitioner and Monte Jenkins in relation to the instant charges and had

11  previously represented Monte Jenkins, Reynaldo Olden and Ron Perkins in other

12  unrelated juvenile proceedings.  In reviewing this claim on direct appeal, the Arizona

13  Court of Appeals denied relief stating:

14              [Petitioner] first argues that Rule 1.7(a), Ariz. R. Prof'l.
        Conduct, Ariz. R.Sup.Ct. 42, 17A A.R.S., required the court to grant
15      the withdrawal.    That rule, however, addresses concurrent
        representation of clients.  [Petitioner's] attorney admitted at the hearing
16      on the motion that his office had withdrawn its representation of
        Jenkins.  [Petitioner] also relies on *Okeani v. Superior Court*, 178 Ariz.
17      180, 871 P.2d 727 (App. 1993).  In that case, a public defender's office
        was actively representing one client who became the victim in the other
18      client's case.  Division One of this court held that withdrawal was
        required because the office's representing both parties would be
19      adverse to the interests of each and because the defendant's attorney
        would have had access to confidential information in the victim's
20      police report.  This case is distinguishable.  The record shows that, at
        the time [Petitioner's] attorney moved to withdraw, the public
21      defender's office represented only [Petitioner], and there is no
        indication that the office gained any confidential information during its
22      brief representation of Jenkins.

                                          27

[Petitioner] also contends the office's representation of Jenkins required withdrawal, arguing "the briefest conference and consultation on a personal level precludes subsequent representation of an adverse party" and citing *Foulke v. Knuck*, 162 Ariz. 517, 784 P.2d 723 (App. 1989), and Rule 1.9, Ariz. R. Prof'l Conduct.  The rule addresses duties owned by attorneys to former clients and prohibits them from representing "another person in the same or a substantially related matter in which that person's interest are materially adverse to the interest of the former client."  Rule 1.9 Ariz. R. Prof'l Conduct.  In *Foulke*, a client consulted an attorney about a divorce and provided information about the case, but did not retain the attorney.  Six months later, the client learned the same attorney intended to represent his estranged wife.  This court held that withdrawal was required because the client had paid for a consultation, provided information about the case, and received legal advice about his rights, making him the former client of the attorney.  Here, unlike in *Foulke*, [Petitioner] made no showing about the extent of the office's representation of Jenkins, whether Jenkins had ever met and consulted with an assistant public defender, or whether he had provided any information to the office, confidential or otherwise.

Moreover, joint representation of criminal defendants is permissible unless and until a conflict arises from that representation.  *State v. Martinez-Serna*, 166 Ariz. 423, 803 P.2d 416 (1990).  Our supreme court held in *Tucker* that an attorney's simultaneous representation for three weeks of a defendant and a potential witness was permissible because the witness was never called to testify and, thus, no actual conflict arose.  *See also State v. Jones*, 185 Ariz. 471, 917 P.2d 200 (1996) (no conflict of interest created when witness previously represented by public defender's office not called to testify).  That is the situation here. Of the four former clients of the public defender that [Petitioner] complains about, two were his codefendants Jenkins and Perkins, who both invoked their Fifth Amendment rights and did not testify.  Neither of the other two witnesses was called at trial.  Thus, no actual conflict ever arose.  *See Tucker, Jones, Martinez-Serna*.

[Petitioner] additionally urges that the appearance of impropriety required the withdrawal.  He relies on *Martinez-Serna*, but that case is readily distinguishable.  We note the court there addressed only Rule 1.7(a), Ariz. R. Prof'l. Conduct, not the appearance of impropriety.  Moreover, in that case, two codefendants were represented throughout

1
2
3
4
5

trial by the same attorney.  Here, the record shows that the public defender's office represented Jenkins "initially" and then withdrew.  As noted above, the record contains no information about the extent of the representation or the reason for the withdrawal, but it is inferable that the office nominally represented Jenkins at his initial appearance before he obtained trial counsel, as the record shows he subsequently did.  In any event, we cannot say the trial court abused its discretion in denying the motion to withdraw on this ground.  *See Tucker; Sustaita.*

*Answer*, Ex. A, pp. 8-11.   The appeals court then noted that this analysis also

supported the rejection of Petitioner's claims under the Sixth Amendment.  *Id.*, p. 11.

In the instant Petition, rather than identify why the Court of Appeals decision

constituted an unreasonable determination of the facts, Petitioner merely reiterates

the argument that the appeals court rejected.  Section 2254(d)(2) authorizes a federal

court to grant habeas relief only where the state court decision was based on an

unreasonable determination of the facts in light of the evidence presented.  Section

2254(e)(1) provides that the state court's determination of the facts is presumed to be

correct, and may only be rebutted by a showing of clear and convincing evidence.

The Arizona court's determination that there was no conflict of interest was not

objectively unreasonable and Petitioner has not identified any evidence that would

cause this court to disagree with its conclusion.

### 3.    Claim 9: Jury Instruction

Petitioner asserts that the trial court's instruction on reasonable doubt

"erroneously decreased the quantum of evidence required to convict by defining

proof 'beyond a reasonable doubt' as being 'firmly convinced.'"  *Petitioner's Memo*,

p. 33.  The language used in the jury instruction is drawn from the reasonable doubt

1    instruction adopted by the Arizona Supreme Court in *State v. Portillo*, 182 U.S. 592

2    (1995).   In summarily denying this claim in Petitioner's direct appeal, the Arizona

3    Court of Appeals relied on several then-recent Arizona Supreme Court cases which

4    approved of the instruction: *State v. Dann*, 205 Ariz. 557, 74 P.3d 231 (2003); *State*

5    *v. Lamar*, 205 Ariz. 431, 72 P.3d 831 (2003); *State v. Canez*, 202 Ariz. 133, 72 P.3d

6    564; and *State v. Van Adams*, 194 Ariz. 408, 984 P.2d 16 (1999).  (Answer, Ex. A, p.

7    13.)   The appeals court's decision was neither contrary to, nor an unreasonable

8    application of, clearly established U.S. Supreme Court precedent.

9         It has been repeatedly noted that the jury instruction given in this matter is a

10   nearly a verbatim copy of the pattern jury instruction on reasonable doubt adopted by

11   the Federal Judicial Center.  *See Arizona v. Van Adams*, 194 Ariz. 408, 418, 984 P.2d

12   16, 26 (1999) (noting instruction based on FJC instruction). The Ninth Circuit has

13   upheld language that is identical or substantially similar to the FJC's pattern

14   instruction. *See Himes v. Thompson*, 336. F.3d 848, 853 (9th Cir.2003).

15   Accordingly, the Arizona Court of Appeals' decision denying this claim was not

16   clearly contrary to nor an unreasonable application of federal law and Petitioner is

17   not entitled to habeas relief on the basis of this claim.

18

19

20

21

22

## III.   <u>RECOMMENDATION</u>

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  If any objections are filed, this action should be designated case number: **CV 10-005-TUC-RCC**.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

Dated this 31st day of May, 2012.

Jacqueline Marshall
United States Magistrate Judge